**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael T. DONINE, Defendant–Appellant.**

No. 92–50309.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 8, 1993.

Decided Feb. 3, 1993.

Jonathan P. Milberg, Los Angeles, CA, for defendant-appellant.

Ronni B. MacLaren, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before BROWNING, POOLE, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Michael Donine pleaded guilty to four counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2(b). He was sentenced to 18 months imprisonment, 3 years of supervised release, a fine of $5,000, and restitution of $24,898. He appeals his sentence. We affirm.

## PROCEEDINGS

Between December 1985 and October 1987 Donine was employed as a stockbroker by Paine Webber in Los Angeles, California. Between October 1987 and March 1989 he worked in the same capacity for Prudential–Bache (Pru–Bache) in Oxnard, California. Between March 1989 and June 1989 he was employed as a financial consultant for Shearson Lehman Hutton in Ventura, California. He was terminated from this position on June 12, 1989 after a customer had complained about an unauthorized check drawn on the customer's account. On July 27, 1989 Donine was indicted on eleven counts of mail fraud in connection with one Paine Webber account, four Shearson Lehman Hutton accounts, and six Pru–Bache accounts handled by him.

On January 13, 1992, when he appeared in court for post-indictment arraignment, Donine informed the pretrial services office that he had no prior arrests.

On March 9, 1992 Donine entered into a plea agreement with the United States Attorney. By its terms he agreed to plead guilty to Counts One, Two, Three, and Four of the indictment, all charging mail fraud in connection with Pru–Bache accounts. The government agreed to dismiss the remaining seven counts, to recommend a 2 point reduction for acceptance of responsibility, to recommend that an increase in Donine's offense level based on the amount of loss should be governed by U.S.S.G. § 2F1.1(b)(1)(F), and that his crimi-

nal history category was I. The agreement specified that otherwise there were "no agreements between you and this office as to the calculation of your guideline range." The agreement also declared that in the federal system sentencing was "solely within the discretion of the Court," upon whom the government's recommendation was not binding.

Donine admitted that he had run up gambling debts in November of over $50,000. To cover them he began to draw checks on customers' accounts, forging letters of authorization. The checks he mailed to his own bank accounts. As to only one account, that of Angelo and Mara Stroe, did Donine offer a different explanation. The $6898 taken from this account, he said, represented profits from unauthorized day trading by him which he parked temporarily in the Stroes' account before withdrawing it for his own benefit.

The presentence report was prepared in April 1992. Running a criminal history check on the defendant, the probation officer discovered that Donine had been arrested in 1990 for the theft of four dress shirts from Nordstroms in Glendale, California and convicted of this crime on January 28, 1991, and that he had also been arrested in 1990 for the theft of a shirt from Bullock's in Los Angeles and convicted of this crime on October 11, 1990. Fines were assessed for both crimes. Donine failed to pay them. At the time of the probation report's preparation bench warrants were outstanding for him in both cases. The presentence report accordingly recommended a two level enhancement because of Donine's obstruction of justice by his "material falsehood" about his arrests and convictions.

The presentence report also recommended a two level enhancement for Donine's abuse of his position of trust as a stockbroker. The report recommended no enhancement for his role in the offense.

At the sentencing hearing the district court accepted Donine's story that the $6898 taken from the Stroes' account represented parked profits, and concluded that

because Pru–Bache bore the risk of loss for the unauthorized trades Donine was "basically stealing, in view of the court, from his employer." The court, after taking testimony, found that Donine had provided materially false information to a probation officer about his arrests and convictions. The court enhanced the sentence further for Donine's abuse of his clients' trust and for crimes requiring more than minimal planning. The court gave the sentence set out above.

Donine appeals, attacking the three enhancements for abuse of trust, more than minimal planning, and obstruction of justice and also challenging the amount of loss that the court used to calculate his base offense level.

## ANALYSIS

■ *Abuse of trust.* Donine argues that his position as a stockbroker did not contribute in a substantial way to facilitate his crime and did not make his crimes difficult to detect. The crimes charged were bilking his customers—simple thefts. These "open" and "obvious" thefts (Donine's characterizations) should not be elevated to a higher offense level by enhancement for breach of trust.

To the contrary, mail fraud alone can be committed without breach of trust. Donine committed his mail frauds by use of his fiduciary relation with his customers. His crimes were not immediately obvious and had been committed for at least 1½ years without arousing the suspicion of Pru–Bache or his customers. The enhancement for breach of trust was warranted.

■ *More than minimal planning.* These "crude and opportunistic simple thefts" (Donine's characterization) did not take more than minimal planning. He just took the money out of the customers' account and used it for himself. So Donine argues against the court's enhancement.

To the contrary, "more than minimal planning is deemed present in any case involving repeated acts over a period of time." U.S.S.G. § 1B1.1, Application Note 1(f). Donine's thefts were repeated over at

least a year and a half, involved the use of phony letters of authorization from customers, and some disguise of Donine's bank accounts. The thefts were not the work of a master criminal but they were neither simple nor unsophisticated. The enhancement for more than minimal planning was appropriate.

■ *Obstruction of justice.* Providing "materially false information to a probation officer in respect to a pre-sentence or other investigation for the court is obstruction of justice." U.S.S.G. § 3C1.1, Application Note 3(h). Donine disputes the evidence, but the district court, on the basis of testimony, found that he had supplied materially false information about arrests and convictions that had recently occurred. Donine's fallback argument is that the information was not material because (1) it did not prevent the probation officer from running his rap sheet and discovering the crimes and (2) the misrepresentations had no effect upon the final sentence because the court imposed the sentence based upon a criminal history category I.

Neither argument works. Attempted obstruction is material even though the lie can be and is detected. *United States v. Baker,* 894 F.2d 1083, 1084 (9th Cir.1990). The stipulation as to criminal history did not bind the district court, and the district court found as a fact that Donine's slips into petty crime after his discharge from Shearson Lehman Hutton was material information. The court was prepared to disregard the stipulation and assign a criminal history category II; it assigned a criminal history category I only because on the day of sentencing Donine was able to expunge one of the shoplifting convictions from his record. The enhancement was justified.

■ *Donine's parked profits.* Donine argues that the $6898 taken from the Stroes was no loss to them and that the judge should not have included it in its calculation of the total offense level because the loss to Pru–Bache was only an "intended" loss and in any event Pru–Bache was not listed as the victim in the count charged.

Donine is unpersuasive. The loss was actual. Trading with Pru–Bache's money, Donine had no title to the profits he made. When he parked them and when he withdrew them he took what belonged to Pru–Bache. In calculating the amount of loss the district court was required to consider "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see United States v. Fine,* 975 F.2d 596, 599–600 (9th Cir.1992) (en banc) (relevant conduct may include uncharged conduct and conduct charged in counts that are later dismissed as part of a plea agreement). Parking his profits in the Stroes' account was part of the same course of conduct as the offense of conviction, regardless of whether the indictment identified the Stroes or Pru–Bache as the victim.

AFFIRMED.