15 F.3d 1091
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clyde Gene GOEKE, Defendant-Appellant.
 No. 93-30043.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1993.
Decided Feb. 3, 1994.
 
 1
 Before: GOODWIN, CANBY, and KOZINSKI Circuit Judges.
 
 
 2
 MEMORANDUM*
 
 
 3
 Clyde Goeke was convicted after a jury trial of conspiracy to violate a federal statute, 18 U.S.C. Sec. 371; theft of government funds, 18 U.S.C. Sec. 641; and food stamp fraud, 7 U.S.C. Sec. 2024(b). Goeke appeals his conviction and sentence on five grounds: (1) statements made by Clyde's wife and codefendant Bonita Goeke were hearsay and inadmissible pursuant to Fed.R.Evid. 801(d)(2)(E); (2) codefendant Bonita Goeke's admission to her probation officer, nine days after Clyde's trial, that most of the fraudulently-obtained public assistance went to support her cocaine habit constitutes a ground for a new trial; (3) a statement made by a juror prejudiced Clyde's right to a fair trial and is a ground for a new trial; (4) the district court erred in enhancing Clyde's sentence for "more than minimal planning;" and (5) the district court erred in refusing to adjust Clyde's sentence downward for minor or minimal participation.
 
 
 4
 We affirm the judgment and sentence of the district court.
 
 I. Factual Background
 
 5
 In December 1988, Bonita Goeke applied to the Cle Elum office of the Washington Department of Social and Health Services (DSHS) for public assistance. Bonita was divorced when she initially applied for public assistance, but remarried her ex-husband, Clyde Goeke, in March 1989. However, she did not report the remarriage until ten months later, during which time she received assistance based upon a single parent family. Had the remarriage been reported, lower assistance rates would have been applicable.
 
 
 6
 In January 1990, Bonita again applied for public assistance after the Goeke family moved to Ellensburg, Washington. As part of the January 1990 reapplication process, Belinda McMillen, a case worker at the Ellensburg office of DSHS had direct contact with Clyde Goeke. Clyde told McMillen that he had been unemployed for the last month. In addition, Clyde signed a DSHS form requiring him to report all employment, as well as quitting or refusal of a job offer.
 
 
 7
 McMillen referred Clyde Goeke to an employment program, which found Clyde a job with Dave Cassida Logging. A short time later, both Bonita and Clyde reported to DSHS officials that Clyde had been discharged from this job. In fact, Clyde quit the job to begin another job at A.L. Reicon, yet he never reported this income to DSHS as required.
 
 
 8
 In July 1990, the Goeke's public assistance file was reassigned to a different case worker, Diane Storms. Storms again referred Clyde Goeke to the employment program, which this time arranged for him to attend vocational school. Clyde was reimbursed under the JOBS program for reported travel expenses to and from school. However, during this time Clyde was not attending school, but working for Al Abel Bulldozing. This employment, if known by DSHS officials, would have made Clyde ineligible for assistance under the JOBS program.
 
 
 9
 During the time the Goeke family received assistance, Clyde Goeke was employed by one or more employers. From March 1989 through October 1990 and from December 1990 until May 1991, he was a bulldozer operator for Al Abel Bulldozing. Clyde Goeke also ran his own business named Tree Fall Land Construction. Deposits totalling $51,378.91 were made in a Security Pacific Bank checking account under the name of Tree Fall Land Construction from April to August 1989, yet neither this income nor Clyde's employment status were reported to DSHS officials. Tree Fall Land Construction also received $15,452.44, less attorney's fees, in 1990 from an insurance settlement. The Goekes also failed to report this income.
 
 
 10
 From April 1, 1989 through May 31, 1991, Bonita and Clyde Goeke, both separately and together, participated in interviews and submitted forms (including application documents and monthly reports) which either concealed the above information or provided false or misleading information to DSHS officials. During this time period the Goekes ignored many other inquiries and requests for documentation by DSHS workers.
 
 
 11
 As a result of the public assistance applications and reports submitted by the Goeke family, it received overpayments in state and federal public assistance from April 1, 1989 through May 31, 1991 of approximately $23,653.25 in grant money, $6,654.00 in food stamps, and $32,370.73 in medical assistance. The total overpayment in federal funds amounted to $37,467.19.
 
 II. Admission of Coconspirator's Statements
 
 12
 Clyde Goeke first claims that statements made by Bonita to various public assistance workers should not have been admitted at trial. The district court, after hearing the defendant's objection, permitted these statements to be introduced pursuant to Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that a statement made by a coconspirator during the course and in furtherance of the conspiracy is not hearsay and is admissible against other members of the conspiracy. Fed.R.Evid. 801(d)(2)(E).
 
 
 13
 "The existence of a conspiracy and [the appellant's] involvement in it are preliminary questions of fact that, under [Federal Rule of Evidence] 104, must be resolved by the court." Bourjaily v. United States, 483 U.S. 171, 175 (1987). The government is required to prove that the declarant was a member of the conspiracy by a preponderance of the evidence before the court may admit the conspirator's statements. Id. A district court, "in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." Id. at 181. We review the district court's decision to admit evidence of a coconspirator's statement for abuse of discretion. United States v. Peralta, 941 F.2d 1003, 1006 (9th Cir.1991), cert. denied, 112 S.Ct. 1484 (1992).
 
 
 14
 A conspiracy agreement need not be explicit, but may be inferred from circumstantial evidence. United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980). Clyde and Bonita Goeke participated in interviews with DSHS officials in which they failed to disclose Clyde's employment. Both Clyde and Bonita signed DSHS forms which underreported the family's income. Both gave the same story regarding Clyde's termination of employment at Dave Cassida Logging. In addition, the district court found it incredible that Goeke was unaware of the fraud scheme because of the large amounts of money involved. We cannot say that the district court abused its discretion in finding by a preponderance of the evidence that a conspiracy existed and that Bonita Goeke's statements to DSHS officials were made during the course of and in furtherance of the conspiracy to commit welfare fraud.
 
 III. Motion for a New Trial
 
 15
 Goeke argues that the district court erred in denying his motion for a new trial based upon newly discovered evidence. Specifically, Goeke claims that at the time of his trial he was unaware of his wife Bonita's cocaine addiction and only learned of her habit following the presentence investigation.
 
 
 16
 A motion for a new trial based on newly discovered evidence should be granted only if the newly discovered evidence weighs heavily against the verdict. United States v. Chen, 754 F.2d 817, 821 (9th Cir.), cert. denied, 471 U.S. 1139 (1985). We review the district court's decision to deny Goeke's motion for a new trial based on newly discovered evidence for an abuse of discretion. United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). Goeke carries a significant burden in showing that the district court abused its discretion in denying the motion for a new trial. United States v. Endicott, 869 F.2d 452, 454 (9th Cir.1989).
 
 
 17
 Four criteria must be satisfied for Goeke to prevail on his motion for a new trial: (1) the evidence is newly discovered and was unknown to Goeke at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal; and (4) failure to learn of the evidence was not due to a lack of diligence on Goeke's part. United States v. Walgren, 885 F.2d 1417, 1428 (9th Cir.1989).
 
 
 18
 The claim that Clyde Goeke was unaware of his wife's cocaine addiction, even if true, is of questionable materiality. Goeke argues that this evidence would have supported his claim that Bonita hid from him all of the public assistance money she received. Even if Bonita used all the $23,653.25 in grant money that she received to support her addition, however, it is unlikely that Clyde would have been oblivious to the public assistance received by the Goeke family: much of the $32,370.73 in medical assistance received by the family went to pay for Clyde's back surgery.
 
 
 19
 In addition, as the district court points out, there is ample evidence in the record establishing Clyde's complicity in the welfare fraud. The newly discovered evidence of Bonita's cocaine addiction does not weigh heavily against the verdict. United States v. Chen, 754 F.2d supra, at 821.
 
 
 20
 Clyde Goeke also claims that he is entitled to a new trial because of juror misconduct. Bonita Goeke allegedly overheard one of the jurors during trial say "I am a little biased ... I don't agree with welfare ... (inaudible) out to hang people (inaudible)." Federal Rule of Criminal Procedure 33 requires that a defendant make a motion for a new trial based on jury misconduct within seven days of the verdict. Goeke did not raise this issue until two months after the verdict. We cannot say that the district court abused its discretion in denying Clyde Goeke's motion for a new trial. United States v. Reyes-Alvarado, 963 F.2d supra, at 1188.
 
 
 21
 Moreover, the juror's fragmentary statement is meaningless in the context of this case and insufficient as a matter of law to impeach the jury verdict. Evidence of the motives and thought processes of jurors is not admissible to impeach a jury verdict. United States v. Rohrer, 708 F.2d 429 (9th Cir.1983); United States v. Pimentel, 654 F.2d 538, 542 (9th Cir.1981). In United States v. Pimentel we held that
 
 
 22
 testimony of a juror concerning the motives of individual jurors and conduct during deliberations is not admissible. Juror testimony is admissible only concerning facts bearing on extraneous influences on the deliberation, in the sense of overt acts of jury tampering.
 
 
 23
 Id. at 542. See also United States v. Davis, 960 F.2d 820, 828 (9th Cir.), cert. denied, 113 S.Ct. 210 (1992). Goeke presented no evidence indicating any extraneous influence on the jury deliberation, and the district court did not abuse its discretion in denying his motion for a new trial on the ground of juror misconduct.
 
 
 24
 IV. The Sentencing Enhancement for "More than Minimal
 
 
 25
 Planning"
 
 
 26
 Clyde Goeke contends that the district court erred in enhancing his sentence for "more than minimal planning" pursuant to U.S.S.G. Sec. 2F1.1(b)(2) because Clyde's involvement in the acts evidencing the fraud were "sporadic and infrequent when compared to the methodical acts of Bonita." However, nowhere do the Sentencing Guidelines instruct us to determining enhancement under Sec. 2F1.1(b)(2) on a comparative basis. Standing alone, Clyde's actions constitute "repeated acts over a period of time," warranting enhancement for "more than minimal planning." United States v. Donine, 985 F.2d 463 (9th Cir.1993). Based on the record, we cannot say that the district court clearly erred. United States v. Peters, 962 F.2d 1410, 1415 (9th Cir.1992).
 
 
 27
 V. Downward Adjustment for Minor Participation
 
 
 28
 Goeke also argues that the district court erred in not reducing his sentence to reflect his "minimal" or "minor" participation in the welfare fraud scheme pursuant to Sentencing Guideline Sec. 3B1.2.
 
 
 29
 A downward adjustment under Sec. 3B1.2 is to be used "infrequently and only in exceptional circumstances." United States v. Taren-Palma, 997 F.2d 525, 535 (9th Cir.1993). Goeke has the burden of proving that he was a minor participant by a preponderance of the evidence. Id. Goeke is not entitled to a downward adjustment merely because he was less culpable than Bonita. United States v. Rexford, 903 F.2d 1280 (9th Cir.1990). Goeke must be "substantially less culpable than the average participant." Taren-Palma, 997 F.2d at 535.
 
 
 30
 The judgment and sentence of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3