125 F.3d 1287
 97 Cal. Daily Op. Serv. 7453, 97 Daily Journal
D.A.R. 12,013
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald C. BARNES, aka Gerald Charles Barnes; Gerald Barnes;
Jerald C. Barnes; Jerald Charles Barnes; Jerry C. Barnes;
Jerry Donald Barnes; Jerry Barnes; Jerald Charles
Barnbaum; Jerald Barnbaum; Gerald Barnbaum; Gerald
Birnbaum; "Doc" Barnes, Defendant-Appellant.
 No. 96-50611.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 8, 1997.
Decided Sept. 18, 1997.
 
 Korey House, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.
 Daniel A. Saunders, Assistant United States Attorney, Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; J. Spencer Letts, District Judge, Presiding. D.C. No. CR-96-00443-JSL-(01).
 Before: BROWNING, BRUNETTI, and TROTT, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Appellant Gerald Barnes appeals the sentence imposed by the district court following his guilty plea for charges stemming from his fraudulent impersonation of a medical doctor. Appellant contends that the district court misapplied the United States Sentencing Guidelines ("Guidelines") to his case. Except for the court's application of the Guidelines' amount of loss provision, we affirm the decision. Accordingly, we remand for recalculation of the loss suffered by the victims and resentencing of Appellant.
 
 I. Facts
 
 2
 The facts in this case are undisputed. Appellant, a trained pharmacist, was born Jerald Barnbaum; he later changed his name to Gerald Barnes. In 1976, after his indictment for mail fraud in Illinois, Appellant's pharmaceutical license was revoked. He subsequently moved to Southern California and began to practice medicine, although he had never attended medical school nor received a medical license. To impersonate a trained physician, Appellant fraudulently obtained documents pertaining to the qualifications of a legitimately licensed doctor, also named Gerald Barnes. He then used these documents to acquire medical positions.
 
 
 3
 The media has written extensively about Appellant's conduct over the past two decades, and the details are not relevant to this decision and need not be recounted. See, e.g., Kenneth B. Noble, Doctor's Specialty Turns Out to Be Masquerade, N.Y. Times, Apr. 17, 1996, at A1; John Carlova, "A Loaded Gun Waiting to Go Off", Medical Economics, Jan. 21, 1985, at 56. Appellant's prior malfeasance resulted in three convictions for practicing without a license and at least one patient's death.
 
 
 4
 In October 1991, after his release from state custody, Appellant obtained employment as a medical doctor with a medical clinic in the Los Angeles area. Over the next five years, he worked at six area medical clinics and doctor's groups and received a salary from his employers for examining and treating patients. In short, Appellant fraudulently represented himself as Doctor Gerald Barnes.
 
 
 5
 In April 1996, Appellant was indicted for his fraudulent actions. In May, the grand jury issued a thirty-one count superseding indictment charging Appellant with mail fraud in violation of 18 U.S.C. § 1341, distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), and use of a Drug Enforcement Administration registration issued to another person in violation of 21 U.S.C. § 843(a)(2). In June, Appellant entered into an agreement with the government, pleading guilty to counts covering each of the three charges. In October, the district court sentenced Appellant to 150 months in prison. Appellant timely appealed.
 
 II. Discussion
 A. Standard of Review
 
 6
 We review the district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Robinson, 94 F.3d 1325, 1327 (9th Cir.1996). The district court's application of the Sentencing Guidelines to the facts is reviewed for abuse of discretion. Id. Factual findings underlying the sentencing decision are reviewed for clear error. Id.
 
 B. Calculating the Amount of Loss
 
 7
 Appellant contends that the district court erred under U.S.S.G. § 2F1.1 in calculating the amount of loss due to his fraud. The Sentencing Guidelines provide a base offense level of six for offenses involving fraud and deceit. See U.S.S.G. § 2F1.1(a). The Guidelines increase this level incrementally based upon the amount of monetary loss attributable to the fraud. See U.S.S.G. § 2F1.1(b)(1). The government and the probation officers calculated losses by using the total amount of billings attributable to Appellant's services. Here, the district court found that Appellant's fraud resulted in a loss of more than $2,500,000 but less than $5,000,000. Although the district court failed to specify the exact amount of loss it found, the court stated at the sentencing hearing that it agreed with the government's valuation of loss. In various documents, the government listed a total loss ranging from $3,496,323.10 to 5,551,167. Because the court increased Appellant's offense level by thirteen steps, we know that it found between $2,500,000 and $5,000,000 in losses. See U.S.S.G. § 2F1.1(b)(1)(n) & (o). Appellant takes issue with the court's evaluation of the total loss caused by his actions and the resulting sentence.
 
 
 8
 Under the Sentencing Guidelines, loss is "the value of the money, property, or services unlawfully taken." U.S.S.G. § 2F1.1, comment. (n.7). When the government seeks an upward adjustment of the offense level it bears the burden of proving loss by a preponderance of the evidence. United States v. Joetzki, 952 F.2d 1090, 1096 (9th Cir.1991). Although "the loss need not be determined with precision" and a "reasonable estimate" is enough, mere speculation is insufficient. U.S.S.G. § 2F1.1, comment. (n.8).
 
 
 9
 Here, the district court used the "recision method" to calculate the total loss caused by Appellant's fraud. In doing so, the court calculated the amount necessary to refund the total charges billed by Appellant's employers for all patients Appellant treated or examined. The court, however, ignored any benefit which Appellant may have provided to the clinics.
 
 
 10
 Because the loss caused by Appellant's employment at Bio-Medics presents the only real issue, we will concentrate on that calculation. From October 1991 through June 1994, Appellant worked part-time at the Bio-Medics plasma center, which sells donated plasma to third parties. During his employment, Appellant performed physical examinations on potential blood donors and reviewed and signed quarterly lab reports containing the results of tests performed on the donated plasma. The government estimated that Appellant's work accounted for $4,214,655 of the center's gross revenues during his tenure. Appellant received $181,989 in total wages for this work. It is important to note that no Bio-Medics customers demanded a refund for monies paid for plasma donated by people examined by the Appellant. In addition, the clinic billed neither the plasma donors nor their insurance companies for the physical examination or the blood tests performed by Appellant or any other employee. Apparently, Appellant's fraudulent actions resulted in no harm to either patients or plasma customers. In short, absent his total salary, Appellant's fraud imposed no monetary loss upon the clinic, donors, or customers.
 
 
 11
 Despite this evidence of Appellant's satisfactory, albeit illegitimate service, the district court accepted the government's valuation of loss, which was based on the revenue generated by Appellant's services. The court found that the total loss to Bio-Medics exceeded $4,000,000. This approach, however, runs counter to established precedent.
 
 
 12
 In United States v. Maurello, 76 F.3d 1304 (3d Cir.1996), the Third Circuit closely examined the Guidelines as applied to an analogous situation. There, the court assessed the amount of damage caused by a disbarred attorney who continued to provide legal services to clients. See Maurello, 76 F.3d at 1308-13. The court rejected the government's argument that Maurello should be liable for "every dollar paid to defendant during his illegitimate practice" despite the satisfactory nature of some services. Instead, it held that
 
 
 13
 [a] client who obtains a satisfactory contract, settlement, or verdict has received something of value, irrespective of whether the lawyer was licensed at the time.
 
 
 14
 * * *
 
 
 15
 [T]he victim has sustained no loss because he has received the services for which he bargained, despite the fact that he has received them from a person who was not legally authorized to offer them.
 
 
 16
 Id. at 1311-12. To determine the amount of loss, the court remanded the case to the trial court to ascertain which of the dissatisfied clients' complaints were legitimate and the total loss attributable to those complaints. Id. at 1313. It cautioned, however, that "[t]o the extent that the unauthorized services provided by defendant have not harmed their recipients, but to the contrary have benefitted them, we conclude that defendant's base offense level should not be enhanced." Id. at 1312.[1] In light of the extensive precedent acknowledging that value may be rendered even amid fraudulent conduct, the district court erred in failing to award Appellant credit for the value of the services he provided satisfactorily.
 
 
 17
 On remand, the district court must review the record to determine if any loss resulted from Appellant's employment at Bio-Medics. In employing Maurello's framework, our review reveals no such loss. In situations like this case, "the victim has sustained no loss because he received the services for which he bargained, despite the fact that he has received them from a person who was not legally authorized to offer them." Maurello, 76 F.3d at 1312. Based on our analysis, the record fails to show that Bio-Medics, donors, or recipients suffered from Appellant's work. Thus, we remand to the district court to determine if Appellant's fraud created a loss for any victim associated with Bio-Medics. Absent such a finding, the court may not use any monetary figure stemming from Bio-Medics to enhance Appellant's sentence.
 
 
 18
 In remanding to the district court for recalculation of the total loss, we do not adopt Appellant's theory that the determination must be limited to the total salary he received during the course of his fraud. Appellant has certainly wrought considerable havoc through his forays into the practice of unlicensed medicine. The district court should consider that upward departure may be warranted where "the loss determined under subsection (b)(1) does not fully capture the harmfulness and seriousness of the conduct." U.S.S.G. § 2F1.1, comment. (n. 10). As the Third Circuit has noted, "the district court is free to reconsider on remand whether the properly calculated 'loss' significantly over-- or understates the gravity of the crime, and therefore whether departure from the normal sentencing range is appropriate." Maurello, 76 F.3d at 1313 (quotations omitted).
 
 
 19
 As to the services rendered by Appellant at the various medical groups, we do not take issue with the district court's use of the recision method. Unlike the consumers of the plasma from Bio-Medics, Appellant's clinic patients paid for the express purpose of seeing a licensed medical doctor. Although some of his work may not have been harmful, we cannot say that Appellant provided any form of satisfactory service to these unsuspecting patients. Consequently, the district court correctly valued their total loss as the full amount billed to them for Appellant's treatment.
 
 
 20
 C. Abuse of A Position of Trust or Use of Special Skill
 
 
 21
 The Appellant also maintains that the district court erred in imposing a two-level enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust or use of a special skill. He argues that this provision does not apply to an individual such as himself, who does not legitimately occupy a position of trust.
 
 
 22
 Section 3B1.3 provides for a two-level increase
 
 
 23
 [i]f the defendant abused a position of public or private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense.
 
 
 24
 Appellant contends that because he was not in fact a medical doctor, he could not have occupied a position of trust. We reject this contention.
 
 
 25
 Our precedent soundly refutes Appellant's argument. We have stated that "[f]or purposes of section 3B1.3, a position of trust, if any, must be established from the perspective of the victim." United States v. Hill, 915 F.2d 502, 506 n. 3 (9th Cir.1990). Because Appellant does not argue that his employers and patients failed to perceive him as anything but a doctor, section 3B1.3 applies. We do not read the Guidelines as mandating that one must actually hold a position of authority in order to qualify for the enhancement. We will not create such a requirement now.
 
 
 26
 Further, Appellant's argument contradicts his previous assertion that the value of the services provided to his employers and patients should offset our calculation of the total loss. Appellant now argues that his unlicensed status insulates him from the type of liability imposed on a real physician. It was, of course, Appellant's ability to dupe his employers and patients which made his crime such a serious offense. Appellant's abuse of the fundamental trust between doctor and patient is precisely the sort of behavior to which section 3B1.3 is directed.
 
 
 27
 Our conclusion is supported by out-of-circuit holdings. The First Circuit applied this enhancement to a defendant who impersonated a psychologist. United States v. Gill, 99 F.3d 484, 488-89 (1st Cir.1996). In Gill, the court stated that
 
 
 28
 the guideline could be taken to refer only to one who legally or legitimately occupied a position of trust, presumably the usual case. But the threat that animates the guideline may as easily be present where the position is occupied by an imposter. That threat ... is that wrongdoer's position facilitates the crime, reduces the chance of detection, or both.
 
 
 29
 Id. at 489. The Tenth Circuit has echoed this conclusion. See United States v. Queen, 4 F.3d 925, 929 (10th Cir.1993) (holding that defendant who impersonated investment adviser/broker qualified for the 3B1.3 enhancement because victim's perception as such created opportunity for his fraud).
 
 
 30
 In holding that an imposter may abuse his assumed position of trust, we also expressly reject Appellant's primary case, United States v. Echevarria, 33 F.3d 175, 181 (2d Cir.1994) (holding that enhancement is applied only to those who legitimately hold position of trust). As noted above, we will not subject the Guidelines to such a strained and narrow interpretation.
 
 
 31
 In conclusion, Appellant certainly employed a "special skill not possessed by members of the general public" in perpetrating his fraud. Accordingly, we affirm the district court's two-level enhancement for abuse of position of trust or use of special skill.
 
 D. Obstruction of Justice
 
 32
 Appellant argues that the district court erred in applying a two-level enhancement for obstruction of justice. Appellant failed to inform the probation officer about a fourth marriage, which ended in divorce prior to his then-current fifth marriage. He contends that the misrepresentation and omissions regarding his background were not material and therefore could not serve as a basis for application of the enhancement.
 
 
 33
 Section 3C1.1 requires a two-level increase
 
 
 34
 [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the ... sentencing of the instant offense.
 
 
 35
 The adjustment is appropriate where a defendant provides "materially false information to a probation officer in respect to a presentence or other investigation." U.S.S.G. § 3C1.1, comment. (n.3(h)). Information is material if it "would tend to influence or affect the issue under determination." Id. at comment. (n.5).
 
 
 36
 We have held that "for purposes of the obstruction adjustment, it is irrelevant whether justice is actually obstructed or impeded. It is sufficient that the conduct in question has the potential for obstruction of the investigation, prosecution, or sentencing of the instant offense." United States v. Draper, 996 F.2d 982, 986 (9th Cir.1993). Here, the district court found that Appellant omitted the information because he had been subject to a temporary restraining order due to violent conduct toward his former spouse. His former wife also indicated that Appellant owed her $50,000 in unpaid spousal support. At the sentencing hearing, the court stated:
 
 
 37
 What we have as to the wife who was not disclosed is allegations by her of physical violence and ... deception.
 
 
 38
 * * *
 
 
 39
 Those allegations simply seem to me to be additive to the overall picture. And I don't find it easy to believe that this is an innocent mistake that somebody forgot to mention ... so one thinks that there was probably a purpose for that.
 
 
 40
 Thus, the district court found that Appellant's omission was conscious, material, and had the potential to impede sentencing.
 
 
 41
 The district court's interpretation of Appellant's deceit falls well within its broad discretion over sentencing enhancement. See United States v. Magana-Guerrero, 80 F.3d 398, 400-01 (9th Cir.1996) (holding that court did not err in inferring from probation officer's testimony that defendant had lied about prior aliases and that this was sufficient basis for imposing obstruction of justice enhancement). Accordingly, we affirm the enhancement for obstruction of justice.
 
 
 42
 E. Psychological Harm and Severe Emotional Distress to Patients Caused by Appellant's Fraud
 
 
 43
 Finally, Appellant claims that the district court erred in applying a two-level upward departure based upon severe emotional trauma and other nonmonetary harm to victims resulting from his scheme. He contends that the district court failed to "make any findings regarding the applicability of the departure to the facts of this case or why it chose a two-level upward departure." He also argues that the facts of this case were "not sufficiently atypical to warrant an upward departure."
 
 
 44
 As we noted, the Sentencing Guidelines contemplate an upward departure where the loss determined under section 2F1.1(b)(1) does not "fully capture the harmfulness and seriousness of the conduct." U.S.S.G. § 2F1.1, comment. (n.10(a)). The notes refer to cases where "the fraud caused or risked reasonably foreseeable, substantial non-monetary harm" or "the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma." U.S.S.G. § 2F1.1, comment. (n.10(a) & (c)).
 
 
 45
 Here, the Appellant's claims are meritless. First, the district court specifically noted that it agreed with the government concerning the trauma enhancement. The government presented its arguments in the pleadings addressing the sentencing factors. It based its position on numerous letters submitted by the Appellant's victims concerning the emotional and physical impact of his fraud. Thus, the court made its decision in light of copious explanatory material provided by the government. Accordingly, no need existed for the court to explain its ruling further.
 
 
 46
 Appellant also fails to provide legal support for his argument that the harms resulting from his crime were not sufficiently atypical to warrant such a departure. Accordingly, we deem the argument waived. See Seattle School Dist., No. 1 v. B.S., 82 F.3d 1493, 1502 (9th Cir.1996) (holding that party waives issue when it "present[s] no explanation in support of its contention of error."). Further, this court finds Appellant's conduct to be most exceptional in its callous disregard for both the physical and mental well-being of his victims. Accordingly, we affirm the district court's two-level enhancement for psychological harm and emotional distress.
 
 III. CONCLUSION
 
 47
 Because we find that the district court erred in calculating the amount of loss suffered by Appellant's victims, we remand for redetermination on that issue and resentencing. We affirm the remainder of the district court's sentencing decisions.
 
 
 48
 VACATED IN PART AND REMANDED FOR RESENTENCING.
 
 
 
 [1]
 The Third Circuit's comprehensive examination of the Guidelines is consistent with our more general precedent. See United States v. Harper, 32 F.3d 1387, 1393 (9th Cir.1994) (remanding "equity-skimming" case where court valued loss as the full market fair value of the property acquired, not the actual economic value obtained); see also United States v. Rutgard, 108 F.3d 1041, 1064 (9th Cir.1997) (remanding Medicare case where the district court failed to give defendant credit for medical services which were justified by medical necessity); United States v. Licciardi, 30 F.3d 1127, 1134 (9th Cir.1994) (remanding to credit defendant for the value of goods actually delivered)