UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph M. PALOMBA, Defendant–
Appellant.

No. 98–10269.

United States Court of Appeals,
Ninth Circuit.

Submitted June 14, 1999.[1]

Decided July 23, 1999.

Walter F. Brown, Jr., Thelen, Reid &
Priest, San Francisco, California, for de-
fendant-appellant.

Laurie Kloster Gray, Assistant United
States Attorney, San Francisco, California,
for plaintiff-appellee.

Before: HALL, THOMPSON, and
FLETCHER, Circuit Judges.

---

1. The panel unanimously finds this case suit-
able for decision without oral argument. *See*

Fed. R.App. P. 34(a).

FLETCHER, Circuit Judge:

Defendant-appellant Joseph Palomba challenges the punishment he received for fraudulently posing as a surety in connection with government contracts. Palomba claims that his criminal history was not correctly determined under U.S.S.G. § 4A1.2(a)(2), and thus his now-completed sentence was too long. He also claims that the financial loss calculation on which his offense level was based was incorrect because it included losses that were caused by others and were not reasonably foreseeable by him. The financial loss calculation affects the amount of restitution Palomba was ordered to pay, as well as the amount of a separate fine. We do not consider the district court's determination of Palomba's criminal history because the issue is moot. We affirm the district court's calculation of the financial loss.

### District Court Proceedings

On October 22, 1990, Palomba was convicted in federal district court of mail fraud, wire fraud, and making false statements to a federal agency. Palomba had fraudulently posed as a surety for at least nine government contracts, and his actions had caused substantial losses to the United States government through the improper awarding of contracts. On March 13, 1991, the district court sentenced Palomba to a term of 71 months imprisonment and 3 years supervised release. The district court also fined Palomba $60,000 and ordered restitution of $249,884. A panel of this court upheld the conviction and the punishment. In particular, this court upheld the district court's calculation of $357,508 as the intended financial loss from Palomba's scheme. *United States v. Palomba*, 972 F.2d 1346 (9th Cir.1992) (unpublished).[2]

On October 5, 1992, Palomba moved to correct, set aside or vacate his sentence. Among other things, he claimed that he received ineffective assistance of counsel

with respect to two mail fraud counts because the indictments violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* On appeal this court reversed Palomba's conviction on those two counts and remanded for resentencing. *United States v. Palomba*, 31 F.3d 1456 (9th Cir.1994).

A new presentence report was prepared, and on May 26, 1998, Palomba filed a Sentencing Memorandum in the district court. Palomba requested, and the district court granted, a re-opening of the entire sentencing, not just the sentencing related to the two reversed mail fraud counts. Palomba made two arguments at the resentencing.

First, Palomba argued that his criminal history had been miscalculated. In 1976, Palomba had robbed a bank in Washington state and had also coordinated a mail fraud scheme in Southern California. The crimes were entirely independent, but when he was being held in Washington for the bank robbery, the California fraud case was transferred to Washington for plea and sentencing. Palomba argued that the two crimes were "related" under U.S.S.G. § 4A1.2(a)(2) because they were "consolidated" for plea and sentencing and bore the same docket number. The district court disagreed.

Second, Palomba argued that calculation of his offense level was inaccurate because under U.S.S.G. § 1B1.3(a)(1)(B), "relevant conduct" for a participant in a joint criminal activity can be the activity of co-participants, but only if that activity is "reasonably foreseeable." Palomba had received nine offense level points because he was held responsible for an intended financial loss of over $350,000. *See* U.S.S.G. § 2F1.1. Palomba said he would testify that others involved in his fraudulent scheme were responsible for losses that he could not have reasonably foreseen, and therefore the financial loss calculation, the corresponding offense level, and ordered

---

**2.** The "intended loss" figure of $357,508 does not match the ordered restitution of $249,884 because the government became aware of Palomba's scheme before the additional losses were realized.

restitution were too high. The district court found Palomba's argument "without merit."

## Discussion

### I Mootness

The district court held a sentencing hearing on June 3, 1998, at which it considered and rejected Palomba's claim that his criminal history had been miscalculated. Palomba finished the final supervised release portion of his sentence a little more than a month later, on July 11, 1998. The correctness of the district court's calculation of Palomba's criminal history bears only on Palomba's now-completed sentence, and the only question before us is the relevance of possible "collateral consequences" caused by the alleged miscalculation of Palomba's criminal history. *See United States v. Schmidt,* 99 F.3d 315, 317 (9th Cir.1996); *United States v. Dickey,* 924 F.2d 836, 838 (9th Cir.1991).

 This circuit has previously held that a sentence can be challenged, even if it has been completely served, if there might be "collateral consequences for a defendant in any possible future sentencing." *Schmidt,* 99 F.3d at 317 (9th Cir. 1996); *Dickey,* 924 F.2d at 838; *United States v. Mares–Molina,* 913 F.2d 770, 773 n. 3 (9th Cir.1990); *United States v. Montenegro–Rojo,* 908 F.2d 425, 431 n. 8 (9th Cir.1990). Federal Sentencing Guideline § 4A1.1 determines criminal history points based in part on the length of prior sentences. For example, any prior sentence of imprisonment exceeding one year and one month leads to three criminal history points. U.S.S.G. § 4A1.1(a). But this court need not explore the proper calculation of Palomba's sentence because recent Supreme Court authority has superseded our prior law.

 In *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court rejected as moot a challenge to an allegedly erroneous parole revocation. Because the defendant had already served his entire sentence, including the post-revocation portion, the Court did not address the merits of his challenge. The defendant had argued that the revocation "could be used to increase his sentence in a future sentencing proceeding," *id.* at ——, 118 S.Ct. at 986, but the Court held that this was not a sufficient injury for standing:

> A similar claim was likewise considered and rejected in [*Lane v. Williams,* 455 U.S. 624, 633, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982)], because it was contingent upon respondents' violating the law, being caught and convicted. 'Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring.' We of course have rejected analogous claims to Article III standing in other contexts. [*See Los Angeles v. Lyons,* 461 U.S. 95, 102–03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).]

*Spencer,* 523 U.S. at ——, 118 S.Ct. at 987. Prior Ninth Circuit cases reviewing completed sentences because of collateral consequences in future sentencing, for example *United States v. Schmidt,* 99 F.3d 315 (9th Cir.1996), are thus no longer good law.[3] Because Palomba has no standing to challenge his completed sentence, we do not consider his arguments regarding his criminal history calculation.

### II Calculation of Financial Loss

 The financial loss attributable to a fraudulent scheme affects the offense level under the Sentencing Guidelines. U.S.S.G. § 2F1.1. Palomba received a nine-point increase in his offense level because the financial loss attributable to his scheme was more than $350,000, even

---

**3.** Although there is no standing to challenge an improper but completed sentence when only the length of the sentencing is at issue, there is a presumption of collateral consequences sufficient for standing if the correctness of the conviction is at issue. Palomba is not challenging the correctness of his conviction. *Spencer,* 523 U.S. at ——, 118 S.Ct. at 983–85.

though some of that loss was never realized because his scheme was discovered. Once the offense level is determined, a range of criminal fines can be set. U.S.S.G. § 5E1.2. Palomba's offense level was 19, and the range for a fine at that level is $6000 to $60,000. Palomba was fined $60,000. Further, the defendant can be ordered to pay restitution for the actual losses he caused. U.S.S.G. § 5E1.1. Palomba was ordered to pay $249,884.

Palomba claims that the district court's financial loss calculation holds him responsible for acts of others that he could not have reasonably foreseen. Palomba alleges that he neither knew nor could reasonably have foreseen that he would be accepted as a surety on certain government contracts. Guideline § 1B1.3(a)(1)(B) provides that "relevant conduct" may include the following:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), *all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity* .... (emphasis added)

The only evidence Palomba offers at this point regarding what he might have reasonably foreseen is his own testimony.

Palomba is only now making the "reasonable foreseeability" argument, yet he clearly could have made it much earlier, including during two prior appeals to this court. Moreover, on the facts of this case, "reasonable foreseeability" is satisfied because Palomba is not being held responsible for anything other than that which has been caused by his own activity in the furtherance of his own scheme. We therefore affirm the calculation of the financial loss and the offense level.

AFFIRMED.