**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mario Tellez VERDIN, Defendant– Appellant.**

**No. 00–50131.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 2000

Filed March 22, 2001

Gary P. Burcham and Troy Britt, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Mark Edelman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: B. FLETCHER, THOMAS, and WARDLAW, Circuit Judges.

WARDLAW, Circuit Judge:

Mario Tellez Verdin appeals the sentence imposed after he pleaded guilty to

one count of importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960. Because Verdin completed his term of incarceration and began his three-year period of supervised release one week before his appeal was argued, we must first decide whether, as the government urges, Verdin's appeal is moot. We hold that we have jurisdiction to entertain Verdin's appeal because a favorable resolution of the sentencing error he asserts could reduce the period of his current term of supervised release upon resentencing. We nevertheless reject Verdin's claim that the district court erred in imposing a two-level enhancement for obstruction of justice under United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov.1998) ("U.S.S.G. § 3C1.1") for providing a false identity to the probation officer, and affirm the sentence imposed by the district court.

## I. BACKGROUND

On June 19, 1999, Verdin was arrested for attempting to drive a car carrying approximately 29.91 kilograms of marijuana into the United States from Mexico. Upon his arrest, he produced a copy of a birth certificate for David Wayne Bess, born on January 29, 1967, and a California Identification Card bearing Mr. Bess's name.

Government agents investigated Verdin's involvement in the offense and attempted to confirm his identity. The agents discovered two criminal records for David Wayne Bess located under separate FBI numbers. Verdin's fingerprints, however, did not match the fingerprints contained in either set of records. Nor did Verdin's fingerprints match any of the fingerprints in the databases maintained by the Immigration and Naturalization Service or the State of California Department of Justice.

On June 30, 1999, the grand jury returned a two count indictment charging Verdin (under the name David Wayne Bess) with importation of marijuana, in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Verdin later pleaded guilty to count one of the indictment, and count two was dismissed. During the taking of his plea, Verdin adopted "David Wayne Bess" as his *nom de guerre*, testifying it was his "true name" and pleading guilty as Mr. Bess.

Following Verdin's guilty plea, the probation officer conducted a presentence interview. Verdin proceeded as David Wayne Bess. He provided additional details about his assumed family life. Verdin informed the probation officer that he was born on January 29, 1967, and that his parents were Charlie R. Bess and Maria Garcia Amarillas. He also reported that he was born as a twin, and that his brother, Daniel Bess, resided in Mexicali.

David Wayne Bess did indeed have a twin brother named Daniel Bess, whom the probation officer was able to contact. Daniel, who had just seen his brother eight months previously, provided an elaborate physical description of David, describing his height and weight and noting several distinctive tattoos, including a tattoo on his stomach of "Chicali," a large tattoo on his chest of an Hispanic woman wearing a sombrero and holding a gun, and a large tattoo on his back of the Virgin Mary. He also detailed his brother's criminal record, aspects of which were corroborated by rap sheets for David Wayne Bess (aka: David Garcia). That Verdin did not fit Bess's physical description, revealed most strikingly by a six to seven inch height difference and the lack of tattoos, was confirmed when Daniel viewed a photograph of Verdin and failed to recognize him as his brother.

Although the probation report dictated November 12, 1999 concluded that the defendant was not David Wayne Bess, the probation officer was still unable to ascertain Verdin's true identity. It was not until January 12, 2000, seven months after the arrest, that the probation officer learned Verdin's true name from defense counsel.

On February 7, 2000, the district court sentenced Verdin to eighteen months im-

prisonment and three years of supervised release. In reaching this sentence, the district court increased Verdin's base offense level by two levels for obstruction of justice under U.S.S.G. § 3C1.1, reasoning that Verdin "did obstruct and impede ... the probation officer's investigation by providing a false identification to the probation officer," and that "[t]here is nothing more material than a defendant's true identity."

Verdin challenges his sentence on the sole ground that the district court erred in imposing a two-level increase for obstruction of justice.

## II. Jurisdiction

■ At oral argument, Verdin's counsel informed the court that Verdin had been released from prison the prior week, on October 7, 2000, and had begun serving the first year of his three-year term of supervised release. Relying on *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), and *United States v. Palomba*, 182 F.3d 1121 (9th Cir.1999), the government argues that because Verdin was released from prison, his appeal is moot. We disagree.

■ A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, section 2, of the Constitution. *Spencer*, 523 U.S. at 7, 118 S.Ct. 978. The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties "continue to have a personal stake in the outcome of the lawsuit." *Id.* (quotations omitted). "This means that ... the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).

■ An incarcerated criminal defendant's challenge to his conviction satisfies Article III's case-or-controversy requirement because the ongoing incarceration "constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Id.* In cases involving a challenge to the criminal conviction itself, the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement is presumed. *Id.* at 8, 118 S.Ct. 978. Criminal convictions carry with them a host of civil disabilities, such as a defendant's inability to engage in certain businesses, to vote, or to serve as a juror. *See Carafas v. LaVallee*, 391 U.S. 234, 237–38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). As a result, it is an "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences" such that a presumption that they exist is justified. *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

A different case is presented, however, once the defendant completes his sentence. In *Spencer*, a habeas petitioner attacked not his convictions for felony stealing and burglary, but the lawfulness of the termination of his parole status. The Court held that Spencer's challenge to the parole revocation order became moot after he had finished serving the entire term of the sentence underlying the parole revocation. *Spencer*, 523 U.S. at 12–16, 118 S.Ct. 978. In so doing, the Court declined to extend the presumption of collateral consequences attending criminal convictions to challenges of parole revocation. The Court reasoned that, unlike a criminal conviction, "'[n]o civil disabilities ... result from a finding that an individual has violated his parole.'" *Id.* at 12, 118 S.Ct. 978 (quoting *Lane v. Williams*, 455 U.S. 624, 632, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982)). As the Court stated in *Lane*, "At most, certain non-statutory consequences may occur; employment prospects, or the sentence imposed in a future criminal proceeding could be affected," but these "discretionary decisions" made by an employer or a sentencing judge "are not governed by the mere presence or absence of a recorded violation of parole." *Lane*, 455 U.S. at 632–33, 102 S.Ct. 1322. Rather, "these decisions may take into consideration, and are more di-

rectly influenced by, the underlying conduct that formed the basis for the parole violation." *Id.* at 633, 102 S.Ct. 1322.

The Court also rejected Spencer's claim that he had proved the existence of collateral consequences sufficient to satisfy the case-or-controversy requirement. *Spencer*, 523 U.S. at 14–16, 118 S.Ct. 978. The Court disagreed with his assertion that the possibility that the revocation order could trigger an increase in his sentence in a future sentencing proceeding constituted an actual injury. *Id.* at 15, 118 S.Ct. 978. The Court found this potential collateral consequence too speculative for Article III purposes, stating, "A similar claim was likewise considered and rejected in *Lane*, because it was contingent upon respondents' violating the law, getting caught, and being convicted. 'Respondents themselves are able—and indeed required by law—to prevent such a possibility from occurring.'" *Id.* (quoting *Lane*, 455 U.S. at 633 n. 13, 102 S.Ct. 1322).

In *Palomba*, the defendant also challenged not his conviction, but his sentence, as having been based on an incorrect criminal history calculation, which he claimed, resulted in a lengthier sentence than should have been imposed. *Palomba*, 182 F.3d at 1122. At the time of his appeal, Palomba had finished the final supervised release portion of his sentence. *Id.* at 1123. We ruled that in light of *Spencer*'s holding that collateral consequences cannot be presumed where a defendant has already served his entire sentence, Palomba did not have standing to challenge his completed sentence. *Id.* We disapproved our prior cases to the contrary, stating our "cases reviewing completed sentences because of collateral consequences in future sentencing . . . are thus no longer good law."[1] *Id.*

Contrary to the government's position, *Spencer* and *Palomba* do not control our decision in this case. Even though Verdin has completed his term of incarceration, this is not a case in which the conclusion whether Verdin has shown collateral consequences in future sentencing determines our jurisdiction. In the context in which *Spencer* and *Palomba* considered this question, the defendant "had argued that the revocation 'could be used to increase his sentence in a future sentencing proceeding,' but the Court held that this was not a sufficient injury for standing." *Palomba*, 182 F.3d at 1123 (citation omitted) (quoting *Spencer*, 523 U.S. at 15, 118 S.Ct. 978).

In contrast, Verdin has a "personal stake in the outcome" of this appeal. Unlike *Spencer* and *Palomba*, Verdin has not completed his entire sentence, but is in the first year of a three-year term of supervised release, which could be affected upon resentencing. If he were to prevail, in decreasing his total offense level, he could be resentenced to a shorter period of supervised release. Therefore, his appeal is not moot because "success for [Verdin] could alter the supervised release portion of his sentence." *Dawson v. Scott*, 50 F.3d 884, 886 n. 2 (11th Cir.1995).

In particular, Verdin was sentenced to eighteen months in prison and three years of supervised release. In arriving at the sentence, the district court imposed a two-level increase to Verdin's base offense level for obstruction of justice, for a total offense level of 15. The guideline range for incarceration, given Verdin's criminal history category of I, was eighteen to twenty-four months, and the district court sentenced Verdin at the low-end of the guideline range—eighteen months.

---

1. *Palomba* represents a shift in this circuit's law. We had previously held "that a sentence can be challenged, even if it has been completely served, if there might be 'collateral consequences for a defendant in any possible future sentencing.'" 182 F.3d at 1123. (citations omitted). In *United States v. Schmidt*,

99 F.3d 315 (9th Cir.1996), for example, we concluded that a defendant's appeal of his 90-day sentence for a probation violation was not moot because the sentence, though completed, "could indirectly affect a future sentence." *Id.* at 317.

The district court, however, imposed the high-end of the required period of supervised release. Because Verdin possessed less than fifty kilograms of marijuana, his maximum sentence was five years. *See* 21 U.S.C. § 960(b)(4). That maximum sentence made Verdin's offense a Class D felony, *see* 18 U.S.C. § 3559(a)(4), thereby subjecting him to a period of supervised release of two to three years. *See* U.S.S.G. § 5D1.2(a)(2) (mandating a term of "at least two years but not more than three years for a defendant convicted of a Class ... D felony").

Should Verdin succeed on this appeal, his offense level would be reduced to thirteen, which carries a guideline range for incarceration of twelve to eighteen months. Although Verdin would remain subject to supervised release even if the district court were to resentence him to the low-end of the guideline range, *see* 21 U.S.C. § 960(b)(4) (stating that "a term of supervised release of not less than two years" shall be imposed "[i]f a sentence under this paragraph provides for imprisonment"), the district court could reduce the length of supervised release from three years to two. Indeed, with a twelve month sentence, it is only the statute of conviction, not the guidelines, that requires any term of supervised release. *See* U.S.S.G. § 5D1.1(a) (term of supervised release not required unless "a sentence of imprisonment of more than one year is imposed, or when required by statute"). Thus, Verdin has a "personal stake in the outcome" of this appeal, and it is not moot.

## III. Enhancement for Obstruction of Justice

 Verdin challenges the two-level enhancement the district court imposed for obstruction of justice pursuant to U.S.S.G. § 3C1.1. "We review the district court's interpretation and application of the Sentencing Guidelines *de novo.*" *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir.1997).

Section 3C1.1 provides:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1 (1998). Verdin argues that section 3C1.1 does not apply to false statements about identity in a prosecution for importing marijuana, relying upon the "plain language" of clause (B) to section 3C1.1, a provision which was added to the guideline under the November 1, 1998 amendments. He argues that clause (B) requires that the obstructive conduct relate to the defendant's offense of conviction, relevant conduct, or to a related offense and that his false statements regarding his identity bore no relation to his offense of conviction—importation of marijuana.

Before the November 1, 1998 amendment, section 3C1.1 provided for a two-level increase in a defendant's offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S.S.G. § 3C1.1 (1997). The application notes specified that "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" warranted an enhancement under this section. U.S.S.G. § 3C1.1, cmt. n. 3(h) (1997). Materially false information included information that, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n. 5 (1997).

Under this prior version of section 3C1.1, we consistently approved enhancements for obstruction of justice where a defendant provided materially false information to a probation officer during the

investigation, prosecution, or sentencing of the defendant for the underlying charge. *See e.g., Barnes*, 125 F.3d at 1292–93 (9th Cir.1997) (defendant subject to enhancement for failing to inform the probation officer about a fourth marriage in which he was subject to a temporary restraining order due to violent conduct to his former spouse because it had the potential to influence sentencing in his offense of fraudulently impersonating a doctor); *United States v. Magana–Guerrero*, 80 F.3d 398, 400–01 (9th Cir.1996) (lying to pretrial services officer and probation officer about prior convictions and the prior use of aliases justified enhancement in case involving conspiring to transport and harbor illegal aliens); *United States v. Donine*, 985 F.2d 463, 465 (9th Cir.1993) (enhancement justified where defendant failed to disclose prior arrests and convictions to probation officer in mail fraud prosecution); *United States v. Baker*, 894 F.2d 1083, 1084 (9th Cir.1990) (defendant's misstatements to the probation officer regarding his criminal history merited enhancement in counterfeit credit card prosecution because they could lead to an inaccurate sentence or a delay in ascertaining accurate information to the court). This court also has found that the use of an alias can obstruct justice within the meaning of section 3C1.1. *See e.g., United States v. Rodriquez–Macias*, 914 F.2d 1204, 1205 (9th Cir.1990).

Verdin concedes that the two-level enhancement for obstruction of justice would have been proper under the prior version of section 3C1.1 as we have applied it. He argues, however, that the addition of clause (B) renders section 3C1.1 more restrictive than before, making it applicable only to obstructive conduct directly related to the offense of conviction.

■ We reject Verdin's argument because it is contrary to the plain language of Section 3C1.1 as well as the history and purpose of the November 1, 1998 amendment. According to the Sentencing Commission, the amendment was designed to "resolve[ ] a circuit conflict on the issue of whether the adjustment applies to obstructions that occur in cases closely related to the defendant's case or only those specifically related to the offense of which the defendant [is] convicted." U.S.S.G. Supp. to App. C, Amend. 581 (1998). Several circuits, including the Ninth Circuit, had taken the view that the adjustment applied if the defendant obstructed or attempted to obstruct justice in a closely related case. *See United States v. Acuna*, 9 F.3d 1442, 1446 (9th Cir.1993). Other circuits had taken a narrower view, holding that the adjustment did not apply to obstructive conduct outside the scope of the charged offense. *See, e.g., United States v. Perdomo*, 927 F.2d 111, 118 (2d Cir.1991), *superseded by regulation as stated in United States v. McKay*, 183 F.3d 89 (2d Cir. 1999). The Sentencing Commission adopted the majority view, making it clear that a defendant's sentence may be enhanced if the obstructive conduct relates "either to the defendant's offense of conviction (including any relevant conduct) or to a closely related case." U.S.S.G. Supp. to App. C, Amend. 581. The purpose of the amendment, then, is not to restrict the types of obstructive conduct warranting an enhancement, as Verdin urges, but to expand them to include obstructions in a closely related case, such as that of a codefendant. *See United States v. O'Dell*, 204 F.3d 829, 836 n. 4 (8th Cir.2000) (discussing the reason for the amendment).

■ Moreover, even if we were to accept Verdin's construction of the sentencing guidelines, which we do not, we would find, as did the district court, that Verdin's false statements about his identity were material to his offense of conviction. As the district court said, "[t]here is nothing more material than a defendant's true identity; from that all of the other investigation proceeds." Verdin's false statements about his identity affected not only the nature of the investigation and the resources and efforts entailed in ascertaining his true identity, but could have affected his very sentence. *See United States v.*

*Wilson,* 197 F.3d 782, 785–86 (6th Cir. 1999). In *Wilson,* for example, the defendant lied to the probation officer and magistrate judge about "his legal name and criminal history." *Id.* at 783. Because "Wilson had not been truthful with the probation office," the government sought a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. *Id.* Wilson claimed "that his use of an assumed name was not material to his conviction or sentence" and therefore "the district court erred when it gave him a two-level enhancement for obstruction of justice." *Id.* at 785. Finding that this "information could well have influenced or affected the district court's determination of Wilson's sentence within the appropriate guideline range," the Sixth Circuit found that his use of an assumed name was material to his sentence and thus affirmed the district court's two-level enhancement for obstruction of justice under the amended version U.S.S.G. § 3C1.1. *Id.* at 786.

Finally, the application notes to the amended guideline make it clear that "providing materially false information to a probation officer in respect to a presentence or other investigation for the court" is grounds for an enhancement under section 3C1.1. U.S.S.G. § 3C1.1, cmt. n. 4(h) (1998); *see also United States v. Takahashi,* 205 F.3d 1161, 1168 (9th Cir.2000) ("[W]hen interpreting and applying the Sentencing Guidelines, courts should always consider the [accompanying] commentary, regardless of how clear the guideline may appear on its face.") (internal quotation omitted).

The district court did not err when it enhanced Verdin's offense level for obstruction of justice under U.S.S.G. § 3C1.1 for providing a false identity to the probation officer.

AFFIRMED.