**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

D.M.,
*Defendant-Appellant.*

No. 16-50243

D.C. No.
3:12-cr-01821-BTM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, Chief District Judge, Presiding

Argued and Submitted April 3, 2017
Pasadena, California

Filed September 7, 2017

Before: Kim McLane Wardlaw and Consuelo M. Callahan,
Circuit Judges, and Virginia M. Kendall,[*] District Judge.

Opinion by Judge Callahan

---

[*] The Honorable Virginia M. Kendall, United States District Judge for the Northern District of Illinois, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel vacated the district court's order denying the defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2).

The government agreed that the defendant was eligible for a sentence reduction under United States Sentencing Guidelines Amendment 782, which lowered the recommended sentence for drug offenses.

The panel held that despite the defendant's release from federal prison, the appeal was not moot.

Agreeing with the Seventh Circuit, the panel held that U.S.S.G. § 1B1.10(b)(2)(B) allows a court to consider a number of departures when calculating a reduction in sentence where the defendant has provided substantial assistance, and the court is not limited to consideration only of the departure attributable to substantial assistance. The panel distinguished *United States v. Ornelas*, 825 F.3d 548 (9th Cir. 2016), which did not address § 1B1.10(b)(2)(B), an exception to the policy statement otherwise set forth in U.S.S.G. § 1B1.10(a). The panel also concluded, alternatively, that the defendant was entitled to the benefit of the rule of lenity because the Guideline was ambiguous.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

James Fife (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Helen H. Hong (argued), Assistant United States Attorney, United States Attorney's Office, San Diego, California, for Plaintiff-Appellee.

## OPINION

CALLAHAN, Circuit Judge:

D.M. appeals the denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). The Government agrees that D.M. was eligible for a sentence reduction, but contends that the appeal is moot because D.M. has been released from federal prison. We hold that the appeal is not moot, and that United States Sentencing Guideline § 1B1.10(b)(2)(B) allows a court to consider a number of departures when calculating a reduction in sentence where the defendant has provided substantial assistance. We vacate the district court's order denying D.M.'s motion for a sentence reduction and remand the case to the district court.

## FACTUAL BACKGROUND

In April 2012, D.M. was stopped at a border patrol checkpoint in California. Agents discovered 3.458 kilograms of methamphetamine and 0.984 kilograms of cocaine. D.M. was charged with, and subsequently pleaded guilty to, possession with intent to distribute under 21 U.S.C. § 841(a)(1). This triggered a mandatory minimum sentence

of 120-months incarceration and five years of supervised release due to the amount of methamphetamine discovered. 21 U.S.C. § 841(b)(1)(A)(viii).

D.M. accepted responsibility and expressed a willingness to assist law enforcement. Pursuant to 18 U.S.C. § 3553(e), the government moved to permit the court to impose a sentence below the 120-month statutory minimum.[1] *See* 18 U.S.C. § 3553(e) (allowing a court to impose a sentence below the mandatory minimum pursuant to a Government motion "so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense").

D.M.'s original, pre-departure and pre-adjustment offense level under the United States Sentencing Guidelines (USSG) was 38. However, following additional adjustments for acceptance of responsibility and a minor role, as well as departures for fast track and substantial assistance, D.M.'s adjusted offense level was 21, which produced an adjusted guideline range of 57 to 71 months. The district court imposed a 57-month prison sentence, with five years of supervised release. The district court specifically retained jurisdiction to amend D.M.'s term of supervised release should he exhibit good behavior.

In November 2014, the United States Sentencing Commission (Sentencing Commission) passed Amendment 782, which lowered the recommended sentence for drug offenses. *See United States v. Navarro*, 800 F.3d 1104, 1107

---

[1] Because of his previous criminal convictions, D.M. was not eligible for "safety valve" relief from the mandatory minimum under 18 U.S.C. § 3553(f).

(9th Cir. 2015). In particular, Amendment 782 provided for the lowering of the base offense level of certain drug convictions by two levels. *See United States v. Ornelas*, 825 F.3d 548, 553 (9th Cir. 2016). At the same time, the Sentencing Commission promulgated Amendment 788, which allowed courts to apply Amendment 782 retroactively. *See Navarro*, 800 F.3d at 1107. Thus, Amendment 782 applied to D.M. and lowered his base offense level to 36. *See* USSG § 2D1.1(c)(2).

## PROCEEDINGS IN THE DISTRICT COURT

In light of Amendments 782 and 788, D.M., with the Government's concurrence, moved to reduce his sentence to 51 months. The Government joined D.M.'s request. The motion was made pursuant to 18 U.S.C. § 3582(c)(2) and USSG 1B1.10(b)(2)(B). The statute reads:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The guideline subsection states:

> Exception for Substantial Assistance. If the
> term of imprisonment imposed was less than
> the term of imprisonment provided by the
> guideline range applicable to the defendant at
> the time of sentencing pursuant to a
> government motion to reflect the defendant's
> substantial assistance to authorities, a
> reduction comparably less than the amended
> guideline range determined under subdivision
> (1) of this subsection may be appropriate.

USSG § 1B1.10(b)(2)(B).

At the initial hearing, the district court expressed reservations as to whether, in reducing D.M.'s sentence, it could consider departures other than the departure attributable to substantial assistance. The district court noted that, if it could only consider the substantial assistance departure, then it could not reduce D.M.'s sentence because the minimum available sentence would be longer than the sentence D.M. was serving. Seeking clarification on the issue, the district court ordered further briefing. At a second hearing, the district court reiterated that it wanted the Government's position "in writing" so it could fully consider the Government's reasoning before ruling. Following a third hearing, the district court denied the joint application for sentence reduction.

The district court defined the issue as: "When a defendant previously received a substantial assistance departure as well as an additional departure for fast-track, in granting 'a reduction comparably less than the amended guideline range,' may the Court include in the calculation the fast-track

departure?" The court held that USSG § 1B1.10 did not allow for the inclusion of the fast-track departure.

This conclusion rendered D.M. ineligible for a reduction in his sentence. Here is the math. In determining D.M.'s initial sentence, the court determined that the applicable adjusted offense level was 29, and it granted a four-level departure under USSG § 5K1.1 for substantial assistance and another four-level departure under USSG § 5K3.1 for D.M. having agreed to the fast-track procedure. This produced a guideline range of 57 to 71 months of imprisonment, and the district court sentenced D.M. to 57 months. At the resentencing hearing, D.M.'s adjusted total offense level was 28, which resulted in an amended guideline range of 110 to 137 months. Under the district court's approach—considering only the substantial assistance departure in its calculation—the parties agreed that the four-level departure for substantial assistance was about 30%. Applying the 30% reduction to the low end of the amended guideline range, 110 months, produced a proposed minimum sentence of 77 months [110 x 70% = 77]. This is greater than the 57-month sentence that D.M. had originally received. Thus, because D.M. had received the benefit of a fast-track departure in his initial sentence, when that departure was excluded from the calculation of a reduction of sentence pursuant to § 3582(c)(2) and USSG § 1B1.10(b)(2)(B), the minimum possible sentence was greater than the sentence he had received, and he was not eligible for a reduction.[2]

---

[2] Unlike the situation presented in *United States v. Rodriguez-Soriano*, 855 F.3d 1040 (9th Cir. 2017), where we held that the defendant was not eligible for a reduced sentence because the guideline range played

D.M. filed a timely notice of appeal from the denial of his motion for a sentence reduction.

## THE APPEAL IS NOT MOOT

We first consider the Government's assertion that this appeal is moot and should be dismissed. "A case becomes moot when it no longer satisfies the case-or-controversy requirement of Article III, section 2, of the Constitution." *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001). The parties must retain a personal stake in the outcome throughout the entirety of the proceedings. *Id*. A defendant challenging the length of his prison sentence has a personal stake in the outcome while he serves his sentence. *Id*. at 1178. This includes when the defendant has completed his term of incarceration but is still serving a term of supervised release. *Id*. "[A] possibility of the court's reducing or modifying [a defendant's] supervised release" satisfies the case or controversy requirement. *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001).

"The party asserting mootness bears a 'heavy burden of establishing that there is no effective relief remaining for a court to provide.'" *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007) (quoting *GATX/Airlog Co. v. U.S. Dist. Court*, 192 F.3d 1304, 1306 (9th Cir. 1999)). In *Strong*, we reiterated "that where the district court has the statutory discretion to modify a defendant's term of supervised release following a successful sentencing challenge, the possibility that the district court may exercise such discretion following

no role in the determination of his initial sentence, here there is no question that the district court relied on guideline ranges in calculating D.M.'s sentences.

this court's decision is sufficient to prevent an appeal from becoming moot." *Id*. at 1060. In other words, to avoid mootness based on a defendant's release from custody pending appeal, the district court must have the authority to reduce the defendant's supervised release.

The Government posits that, because D.M. has been released from federal custody, this appeal is moot and should be dismissed. Citing a couple of our unpublished decisions, the Government argues that D.M. sought only a reduction of his custodial sentence and that, once he finished serving his sentence, no court could provide that relief.[3] It further argues that 18 U.S.C. § 3582(c) does not provide for a reduction in the supervised release portion of a sentence.

D.M. has been released from prison, and his five-year-term of supervised release has commenced. Nonetheless, the appeal is not moot because the district court may modify D.M.'s term of supervised release. *See* 18 U.S.C. § 3583(e)(2) ("The court may. . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release."). In addition, in December 2017, D.M. will be able to move the district court under 18 U.S.C. § 3583(e)(1) to terminate his five-year-term of supervised release in "the interest of justice." The Sentencing Guidelines expressly state that, in

---

[3] The unpublished decisions cited by the Government, *United States v. Partida-Vargas*, 531 F. App'x 815 (9th Cir. 2013), and *United States v. Germany*, 529 F. App'x 853 (9th Cir. 2013), simply note that each defendant had finished serving his "term of imprisonment." There is no indication that either case concerned a term of supervised release. By contrast, in *United States v. Mosley*, 383 F. App'x 635 (9th Cir. 2010), we dismissed the appeal because Mosley was no longer subject to the supervised release condition that was the subject of his appeal.

determining whether to do so, the district court can consider in his favor his eligibility for a § 1B1.10 sentence reduction that was not granted because of timing. USSG § 1B1.10 cmt. n.7.

The possibility of further relief is not foreclosed by 21 U.S.C. § 841(b)(1)(A)(viii), which sets forth a mandatory minimum of five-years' supervised release, because 18 U.S.C. § 3553(e) allows for the imposition of a sentence "below a level established by statute as a minimum sentence" where a defendant has provided substantial assistance. Moreover, 18 U.S.C. § 3583(a) specifies that a term of supervised release is "include[d] as part of the sentence."

Because § 3553(e) applies to supervised release, the district court in this case maintains discretion to reduce D.M.'s five-year supervised release sentence on remand. Indeed, during D.M.'s initial sentencing, the district court expressed a willingness to reduce his supervised release term if he exhibited good behavior. Accordingly, the Government has not met its burden of showing a lack of possibility of relief for D.M., and we reject its assertion that this appeal is moot.

## D.M. IS ELIGIBLE FOR A REDUCED SENTENCE

"The district court's interpretation and application of the Sentencing Guidelines are reviewed de novo." *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc). Similarly, a district court's determination that it does not have the authority to reduce a sentence is a question of law and is reviewed de novo. *See United States v. Jackson*, 577 F.3d 1032, 1033 (9th Cir. 2009).

In general, a criminal sentence may not be modified except in limited circumstances. *See Dillon v. United States*, 560 U.S. 817, 824 (2010); *see also* 18 U.S.C. § 3582(b). One such circumstance is where a defendant was sentenced "based on" a guideline range that has "subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Both the statute and USSG § 1B1.10(a)(1) require that the reduction be consistent with applicable policy statements issued by the Sentencing Commission. Thus, the statute requires a determination first that a sentence reduction is consistent with the applicable policy statements, and then, if it is, consideration of whether a reduction is warranted after weighing any applicable § 3553(a) factors. *Rodriguez-Soriano*, 855 F.3d at 1041; *United States v. Phelps*, 823 F.3d 1084, 1087 (7th Cir. 2016).

One limitation imposed by the policy statement at issue here is a prohibition against reducing a sentence below the "minimum of the amended guideline range." USSG § 1B1.10(b)(2)(A). In determining a reduction in the term of imprisonment, USSG § 1B1.10(b)(1) provides that "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." However, USSG § 1B1.10(b)(2)(B), on which D.M and the Government rely, provides a specific exemption to this floor, allowing a reduction where "the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities."

Here, the district court did not reach the point of weighing the applicable § 3553(a) factors because it calculated the available minimum sentence for D.M. as exceeding the length of his current sentence of imprisonment. Accordingly, we are called upon to determine whether the interplay between § 3582(c)(2) and USSG § 1B1.10(b)(2)(B) compels the result reached by the district court, or whether, as urged by the Government and D.M., a court may consider a number of departures when calculating a reduction in sentence pursuant to USSG § 1B1.10(b)(2)(B).

We note that the policy statement is not a model of clarity. Nonetheless, we conclude that the most natural reading of the policy statement, its history, and the practical consequences of opposing interpretations, all favor the conclusion that it allows a court to consider additional applicable departures in an original sentence, not just the deduction specifically attributed to substantial assistance. Our conclusion is not contrary to our existing precedent, and, to the extent that there is an existing circuit split, we agree with the Seventh Circuit's opinion in *United States v. Phelps*, 823 F.3d 1084 (7th Cir. 2016). Finally, we note that, even if our consideration of all the aids to interpreting the policy statement did not firmly support our conclusion, D.M. would nonetheless be eligible for consideration of a reduced sentence under the rule of lenity.

## A. A natural reading of the provisions allows a court to consider various departures.

The choice of "term of imprisonment imposed" in USSG § 1B1.10(b)(2), as contrasted with "the term of imprisonment provided by the guideline range" directs our attention to the actual sentence imposed, rather than to how that sentence was

calculated. The Sentencing Commission is familiar with the terms used in the Sentencing Guidelines and it could have used more specific terminology if it wanted courts to look beyond, or to something other than, the "term of imprisonment imposed."

This approach informs our interpretation of the rest of the subsection. The subsection states that, if the defendant's original sentence was less than the guideline range "pursuant to a government motion to reflect the defendant's substantial assistance," there may be "a reduction comparably less than the amended guideline range." This certainly provides that substantial assistance is the triggering event that authorizes a court to reduce a sentence below the amended guideline range. However, it might also be construed as defining "comparably less" as depending solely on the level of reduction based on substantial assistance. But neither the Guideline nor the Application Notes warn of, or advise of, such a reading. Rather, they are consistent with the approach that where a below minimum sentence is triggered by a finding of substantial assistance, the "comparably less" computation is based on the actual sentence (including all reductions), rather than based on a recalculation of the sentence to include only the reduction directly attributable to substantial assistance.

This determination finds support in the Application Notes that set out how "comparably less" is to be applied. The Application Notes explain how the reduced term is calculated and adds the caveat that the "term of imprisonment" may not be reduced below time served, but do not inform the reader of

any need to unpack the initial sentence.[4]  USSG § 1B.10 cmt.
n.3.  A natural reading of the Guideline and the Application
Notes fails to support the restricted reading adopted by the
district court.

The district court opined that if "the Sentencing
Commission intended the comparable reduction to encompass
prior departures or variances for reasons other than
substantial assistance . . . it could have said so."  We agree
that the Sentencing Commission could have been more
explicit, but hold that in this context its silence supports a

---

[4] Application Note 3 states, in part:

> In such a case, the court may reduce the defendant's
> term, but the reduction is not limited by subsection
> (b)(2)(A) to the minimum of the amended guideline
> range.  Instead, as provided in subsection (b)(2)(B), the
> court may, if appropriate, provide a reduction
> comparably less than the amended guideline range.
> Thus, if the term of imprisonment imposed in the
> example provided above was 56 months pursuant to a
> government motion to reflect the defendant's
> substantial assistance to the authorities (representing a
> downward departure of 20 percent below the minimum
> term of imprisonment provided by the guideline range
> applicable to the defendant at the time of sentencing) a
> reduction to a term of imprisonment of 41 months
> (representing a reduction of approximately 20 percent
> before the minimum term of imprisonment provided by
> the amended guideline range) would amount to a
> comparable reduction and may be appropriate.

USSG §1B.10 cmt. n.3.  Although the language in the parentheticals could
conceivably be construed to support the district court's approach, we
reject such a reading as inconsistent with the general intent of the
guideline, and too thin a reed to compel all courts to deconstruct the initial
sentences when resentencing under USSG § 1B1.10(b)(2).

broad, rather than a narrow, reading. We note that this interpretation, which is supported by the Government, only results in D.M. being eligible for a reduction in his sentence. The district court must still determine whether to grant such a reduction.

**B. The history of USSG § 1B1.10 suggests favorable treatment for cooperators and an intent to avoid difficult applications of the statute.**

The history of the guideline gently favors the approach urged by the Government and D.M. Prior to 2011, USSG § 1B1.10 made a distinction between variances and departures in its exception to the general rule that a court could not reduce a sentence below the minimum of the amended guideline range. The exception allowed for sentence reductions below the amended guideline range when "the original term of imprisonment" was less than the original guideline range because of any departure. USSG § 1B1.10(b)(2)(B) (amended 2010). However, if the original term of imprisonment was below the guideline minimum because of a variance, "a further reduction generally would not be appropriate." *Id.* The Sentencing Commission passed Amendment 759 in 2011 to eliminate the departure-variance distinction, citing "public comment and testimony indicating that this distinction ha[d] been difficult to apply and ha[d] prompted litigation." USSG app. C, amend. 759, at 420 (Nov. 2011) (Reasons for Amendment). In doing so, the Sentencing Commission recognized the distinction between defendants who received substantial assistance departures and those who did not. The intent was to implement "recogni[tion] that defendants who provide substantial assistance are differently situated than other defendants and should be considered for a sentence below a guideline or

statutory minimum even when defendants who are otherwise similar (but did not provide substantial assistance) are subject to a guideline or statutory minimum." *Id.* Indeed, the reasons given for the passage of Amendment 759 stress that cooperators are to be eligible for below-guideline sentences.[5]

---

**[5]** The Commission stated:

> [T]he Commission has determined that, in a case in which the term of imprisonment was below the guideline range pursuant to a government motion to reflect the defendant's substantial assistance to authorities (*e.g.*, under § 5K1.1), a reduction comparably less than the amended guideline range may be appropriate. Section 5K1.1 implements the directive to the Commission in its organic statute to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." *See* 28 U.S.C. § 994(n). For other provisions authorizing such a government motion, *see* 18 U.S.C. § 3553(e) (authorizing the court, upon government motion, to impose a sentence below a statutory minimum to reflect a defendant's substantial assistance); Fed. R. Crim. P. 35(b) (authorizing the court, upon government motion, to reduce a sentence to reflect a defendant's substantial assistance). The guidelines and the relevant statutes have long recognized that defendants who provide substantial assistance are differently situated than other defendants and should be considered for a sentence below a guideline or statutory minimum even when defendants who are otherwise similar (but did not provide substantial assistance) are subject to a guideline or statutory minimum. Applying this principle when

Here, the district court's approach is incongruent with the guideline's history in two ways. First, it reduces the benefits to cooperators. As further explained in the next section, the benefit to cooperators intended by USSG § 1B1.10(b)(2) becomes obscure or illusory when a cooperator originally received the benefit of multiple downward departures. Second, it would be inconsistent with the intent behind Amendment 759 to interpret Amendment 782 as somehow resurrecting the type of technical approach that Amendment 759 sought to dissolve. Although the district court in D.M.'s case was careful and thorough in setting forth its precise calculations in imposing the original sentence, this is not always the case.[6] In those cases where a district court fails to

---

the guideline range has been reduced and made available for retroactive application under section 3582(c)(2) appropriately maintains this distinction and furthers the purposes of sentencing.

*Id*.

[6] Indeed, in *United States v. Ornelas*, 825 F.3d 548, 553 n.8 (9th Cir. 2016), we commented: "[a]lthough the record is not entirely clear, the parties do not dispute that the court granted this departure pursuant to § 4A1.3. The district court did not identify the criminal history category it deemed to be applicable to Ornelas under this departure." *See also United States v. Beck*, 992 F.2d 1008, 1009 (9th Cir. 1993) ("The district court sentenced Beck to 50 months' imprisonment, a departure from the applicable guideline range of 30 to 37 months, but gave no reason or justification for the extent of its departure."); *United States v. Cruz-Ventura*, 979 F.2d 146, 150 (9th Cir. 1992) ("[T]he district court did not adequately state its reasons for the amount of the departure on the record."); *United States v. Bylas*, 70 F. App'x 420, 422 (9th Cir. 2003) ("We cannot assess the reasonableness of the extent of the 'extreme conduct' departure on this record because the district court cumulatively considered both the Defendant's 'extreme conduct' and underrepresented criminal history.").

specify the values of each departure, the district court's narrow interpretation would create uncertainty and inconsistencies as the parties would be relegated to speculating as to the court's reasons for imposing the initial sentence. In contrast, the interpretation advanced by the parties favors cooperators and provides a straight forward method for determining a reduced sentence, without forcing courts to attempt to deconstruct the original sentence by determining the specific values of each departure or variance.

**C. The district court's interpretation creates anomalies and undesirable consequences**.

There are at least two undesirable practical consequences of the district court's approach. The first, which has already been alluded to, is that, where the original sentencing judge fails to clearly differentiate the various departures, then, upon resentencing, the court will be forced to speculate on the reasons for the initial below-guideline sentence.

Second, the approach creates the anomaly that those who have additional mitigating circumstances strong enough to merit formal downward departures equal to or greater than the amendment effects, are categorically barred from a reduction. True, the individual cooperator who has such additional mitigating circumstances receives the benefit of all the downward departures in his initial sentence. But, why would the Commission intend that defendants with more mitigating factors be denied the continuing benefit of their cooperation? Rather, such an interpretation seems to disincentivize future cooperation.

Moreover, even if there were some sound reason for this approach, it would be inconsistent with Congress's directive

that the Sentencing Commission provide for special treatment of cooperators. 28 U.S.C. § 994(n) directs the Sentencing Commission to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Accordingly, the Sentencing Commission has explained:

> [T]he guidelines and the relevant statutes have long recognized that defendants who provide substantial assistance are differently situated than other defendants and should be considered for a sentence below a guideline or statutory minimum even when defendants who are otherwise similar (but did not provide substantial assistance) are subject to a guideline or statutory minimum.

USSG, app C., amend. 759, at 432 (Nov. 2011) (Reasons for Amendment). We, in turn, interpret the Guidelines to give effect to the intent of the Sentencing Commission. *United States v. Rivera-Constantino*, 798 F.3d 900, 903 (9th Cir. 2015). Thus, even if the term "comparably less" used in USSG § 1B1.10(b)(2)(B) could be interpreted to cover only the reduction directly attributable to substantial assistance, such an approach would be impractical and contrary to Congress's and the Sentencing Commission's intent.

**D. Our approach is not foreclosed by *United States v. Ornelas*.**

In *United States v. Ornelas*, 825 F.3d 548 (9th Cir. 2016), we considered how to calculate a reduction of sentence under USSG § 1B.1.10, and particularly the interpretation of USSG § 1B1.10(a)(2)(B). This subsection provides that a reduction in a term of imprisonment is inconsistent with the policy statement if the amendment "does not have the effect of lowering the defendant's applicable guideline range." *Id*. at 550 (quoting USSG § 1B1.10(a)(2)(B)). In other words, "if the defendant's term of imprisonment is less that the minimum of the amended guideline range, the defendant is ineligible for a sentence reduction." *Id*. In calculating the possible reduced sentence under USSG § 1B1.10(a)(2)(B), we concluded that for that subsection, "applicable guideline range" is determined "pre-departure and pre-variance." *Id*. at 552.

However, as the district court noted, *Ornelas* "doesn't answer the question" presented in this case. Subsection §1B1.10(a)(2)(B) is a distinct provision of the guideline, and our opinion in *Ornelas* did not construe or mention USSG § 1B1.10(b)(2)(B). This is not surprising because USSG § 1.B1.10(b)(2)(B) is an exception to the policy statement otherwise set forth in USSG § 1B1.10(a). Accordingly, the requirements for computing the applicable guideline range for purposes of USSG § 1B1.10(a)(2)(B), in general, do not apply to construing "comparably less" in USSG § 1B1.10(b)(2)(B). This makes sense, as the exception in USSG § 1B1.10(b)(2)(B) only comes into play when the initial term of imprisonment "was less than the term of imprisonment provided by the guideline range applicable to the defendant." Thus, applying the policy statement in

subsection (a)(2)(B) to the exception in subsection (b)(2)(B), would, in many cases, eviscerate the exception.

Rather, the natural reading of the guideline, its history, and the practical consequences of various interpretations, lead us to conclude that, for purposes of the exception that is USSG § 1B1.10(b)(2)(B), a court may consider various departures in the initial sentence in computing a revised sentence.

### E.  To the extent that there is a circuit split, we agree with the Seventh Circuit.

The district court relied on the Sixth Circuit's split decision in *United States v. Taylor*, 815 F.3d 248 (6th Cir. 2016).  In a fairly analogous factual setting, the Sixth Circuit read the history of § 1B1.10 as limiting a below-guideline reduction of a sentence to the proportion directly attributable to substantial assistance.  *Id*. at 251–52.  Judge Merrill dissented, noting that he would not "take away from the sentencing judge the authority to use his or her best judgment in determining the sentence."  *Id*. at 252.

The Seventh Circuit in *Phelps*, 823 F.3d 1084, hewed to a course closer to our approach.  It rejected the district court's "attempt to isolate the effect of Phelps' substantial assistance credit."  *Id*. at 1088.  Instead, it determined that Phelps was "eligible to receive a new sentence of not less than 48 months" even though his "original sentence was below the guideline range for reasons *other than* substantial assistance."  *Id*. at 1087–88.

As is clear from our reasoning, we side with the Seventh Circuit.  That court held "[t]hough the application notes could

be clearer . . . the two-step computation explained in application note 3 applies regardless of whether the substantial-assistance reduction came at the time of the original sentencing or after." *Id*. at 1088. We agree that, because the application notes do not limit the definition of "comparably less" to reductions directly attributable to substantial assistance, other reductions may be considered.

Our reasoning is at variance with the Sixth Circuit's reading of the purpose of Amendment 759 because that reading appears to construe silence as restricting the meaning of "comparably less."[7] We do not deny that the Sentencing

_____

[7] The Sixth Circuit comments that Amendment 759:

> also limited the district court's discretion to reduce a sentence below the amended guideline range, permitting a reduction only when the defendant originally received a below-guidelines sentence based on substantial assistance. [U.S.S.G. App C., Amend. 759] at 416–20. Though Taylor is correct that the Sentencing Guidelines do not specifically address whether a non-assistance reduction may be combined with a substantial assistance reduction, examining the changes to § 1B1.10 over time indicates that the guidelines deny a district court authority to reduce a defendant's sentence below her amended guidelines range except where such a reduction is based on her substantial assistance.

*Taylor*, 815 F.3d at 251. As the Sixth Circuit admits, the Sentencing Guidelines do not "specifically address" non-assistance reductions. Nor are we convinced that the changes to § 1B1.10 over time support or require the proposed restriction. Rather, the Sentencing Commission explains that subsection (b)(2)(B) is an exception to § 1B1.10 and "restricts the exception . . . to cases involving a government motion to reflect defendant's substantial assistance to authorities," thus allowing "a reduction comparably less than the amended guideline range." *Id*. at 420.

Guidelines and Appendix C are less than clear. However, when the ambiguous language is considered in the context of the specific reasons for subsection (b)(2)(B), the parsimonious reading adopted by the Sixth Circuit seems contrary to the Sentencing Commission's intent to follow Congress's instructions to provide cooperators special treatment, and, inherently complicates resentencing.[8]

---

Furthermore, when the Sentencing Commission discussed doing away with the distinction between departures and variances, it extolled the need to promote conformity and avoid undue complexity and litigation. As noted, the approach adopted in *Taylor*, by demanding the deconstruction of the original sentences, creates complexities which promote litigation and undermine conformity.

[8] Most of the cases cited in *Taylor* appear inapposite. Both *United States v. Steele*, 714 F.3d 751 (2d Cir. 2013), and *Hogan v. Hogan*, 722 F.3d 55 (1st Cir. 2013), involved defendants seeking reduction pursuant to retroactive amendments, but neither defendant had received a substantial assistance departure, and accordingly the exception that is USSG § 1B1.10(b)(2)(B) was not in play. In *United States v. Anderson*, 686 F.3d 585 (8th Cir. 2012), the defendant had received a substantial assistance departure, but he raised constitutional challenges on appeal and the Eighth Circuit did not rule on the proper interpretation of the term "comparably less" in USSG § 1B1.10(b)(2)(B).

An unpublished opinion, *United States v. Wright*, 562 F. App'x 886 (11th Cir. 2014), does support the Sixth Circuit's position. However, it also illustrates why that approach generates litigation, confusion, and inconsistency. The Sixth Circuit noted: "Although the sentencing court did not indicate how many levels it departed downward under § 5K1.1, the record is devoid of support for Wright's claim that the district court had imposed an 11-level § 5K1.1 departure, which he admits is what would be necessary in order for him to be eligible for § 3582(c)(2) relief." *Id*. at 888. However, the resentencing court's task is much more difficult and subject to diverse rulings where the defendant asserts a more reasonable degree of departure than did Wright.

**F.  D.M. is entitled to the benefit of the rule of lenity.**

Although the district court recognized that the rule of lenity might apply, it concluded that it did not because it did not find USSG § 1B1.10(b)(2)(B) to be ambiguous.  To the contrary, our discussion of the guideline, its wording, the Sentencing Commission's intent, and the various approaches that have been taken by our sister circuits, clearly demonstrates, if nothing else, that the guideline is ambiguous.

We have held that the rule of lenity applies to the Sentencing Guidelines.  *United States v. Fuentes-Barahona*, 111 F.3d 651, 653 (9th Cir. 1997); *see also  Bifulco v. United States*, 447 U.S. 381, 387 (1980); *United States v. Nielsen*, 694 F.3d 1032, 1038 (9th Cir. 2012).  However, the rule only applies where there is grievous ambiguity or uncertainty in the guidelines.  *United States v. Garcia-Jimenez*, 623 F.3d 936, 944–45 (9th Cir. 2010) (citing *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998)).  The rule of lenity applies when, after considering everything, we can make "no more than a guess as to what Congress intended."  *United States v. Wells*, 519 U.S. 482, 499 (1997) (internal quotation marks omitted).

Here, our consideration of all the aids to interpretation of the guideline leads us to conclude that a district court may consider departures other than those directly attributable to providing substantial assistance in determining the "comparably less" amended guideline range under USSG § 1.B.1.10(b)(2)(B).  However, if our analysis were not persuasive, we would be reduced to guessing what Congress and the Sentencing Commission intended, and the rule of lenity would apply.  In either event, D.M. is eligible for a reduced sentence under USSG § 1.B.1.10(b)(2)(B) and

entitled to have the district court determine whether to award him such a sentence.

## CONCLUSION

In enacting Amendment 759, the Sentencing Commission implemented Congress's direction to take into account a defendant's substantial assistance. We have found nothing in the guideline or comments to the guideline that preclude a court from considering various departures in a prior sentence when resentencing a defendant under USSG § 1B1.10(b)(2)(B), which is an exception within USSG § 1B1.10. We interpret this silence as allowing a court, when implementing USSG § 1B1.10(b)(2)(B), to consider departures that resulted in the previous sentence that were not directly attributable to substantial assistance. This interpretation is consistent with the purposes behind the enactment of Amendment 759, including the preference for approaches that promote conformity and avoid complexity and litigation. It is also supported by both the Government and D.M. Moreover, there is no risk of defendants somehow taking undue advantage of this ruling because, at most, it makes a defendant eligible for a reduced sentence, and the district court must still determine whether the individual defendant warrants the reduction sought.

The district court's denial of the motion for a sentence reduction is vacated and the matter is remanded to the district court.